| | |
|---|---|
| DEXTER W. WHITE, WAYNE BRANTLEY and DAVID HILL,<br>    Plaintiffs,<br>v.<br>GRANT PARKER, individually and d/b/a COLORSCAPES, INC., and LYNN DILLARD DOSS, individually and d/b/a DOSS & ASSOCIATES, FORSHAY LAND TITLE AND APPRAISAL SERVICES, INC., THOMAS THORSON, CUAUTHOMEE BURRIS, CHARLES MATLOCK, LACOULTON WALLS, ABLE TITLE INSURANCE AGENCY, INC., JO ANN LUNA, TIMOTHY GROSSI and GENE NOWACK a/k/a EUGENE Z. NOWAK,<br>    Defendants. | CASE NO. 1:11-CV-294-TRM-CHS |
| GRANT PARKER, PARKER WHITE, LLC, and COLORSCAPES, INC.<br>    Third-Party Plaintiffs,<br>v.<br>FORSHAY LAND TITLE AND APPRAISAL SERVICES, INC., THOMAS THORSON, CUAUTHOMEE BURRIS, CHARLES MATLOCK, LACOULTON WALLS, ABLE TITLE INSURANCE AGENCY, INC., JO ANN LUNA, TIMOTHY GROSSI, and GENE NOWACK,<br>    Third-Party Defendants. | JURY TRIAL DEMANDED |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

      Plaintiffs Dexter W. White, Wayne Brantley, and David Hill and Defendants/Third-Party Plaintiffs Grant Parker, Parker White, LLC ("Parker White"), and Colorscapes, Inc. ("CSL")

(collectively, "Plaintiffs"),[1] have filed a Motion for Default Judgment Pursuant to Federal Rule of Civil Procedure 55(b) against the following defendants: Cuauthomee Burris, Able Title Insurance Company, Inc. ("Able"), Jo Ann Luna, Timothy Grossi, Gene Nowack a/k/a Eugene Z. Nowak, and LaCoulton J. Walls (collectively, "Defendants") (Doc. 194).[2] Plaintiffs White, Brantley and Hill and Third Party Plaintiff Mr. Parker have brought claims against Defendants for breach of contract, conversion, civil conspiracy, fraud and intentional misrepresentation and unjust enrichment. This motion is before the undersigned Magistrate Judge for a report and recommendation having been referred by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). The Court has subject matter jurisdiction under 28 U.S.C. § 1332 as there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy is greater than $75,000.

## II. Facts

The allegations set forth in the Amended Complaint (Doc. 75) and the Third-Party Complaint of Parker (Doc. 57) broadly describe a complex real-estate investment scheme (the "Scheme") that operated from approximately December 2009 through September 2010 by which

---

[1] This Report and Recommendation refers to Mr. Parker, Parker White, and CSL herein collectively as Mr. Parker or Parker.

[2] Defendant Burris was served with process on January 25, 2013. (*See* Affs. of Service [93, 110].) Able was served with process on January 28, 2013, and February 5, 2013. (*See* Affs. of Service [90, 94, 104, 109].) Ms. Luna was served with process on January 28, 2013. (*See* Affs. of Service [95, 106].) Mr. Grossi was served with process on January 25, 2013. (*See* Affs. of Service [92, 105].) Mr. Nowak was served with process on February 2, 2013. (*See* Affs. of Service [81, 82].) Mr. Walls was served with process on June 5, 2015. (*See* Aff. of Service [175].) Plaintiffs have applied for entry of default against each of those Defendants under Federal Rule of Civil Procedure 55(a) (*see* Applications for Entry of Default [147 through -51, 180]), and the Clerk has entered default against each of them (*see* Clerk's Entries of Default [158 through -62, 183]). Other defendants involved in the matters discussed herein have been terminated as defendants, via settlement or otherwise. Lynn Dillard Doss was terminated on August 14, 2012, along with her law firm, Doss & Associates. (*See* Mem. & Order of Aug. 14, 2012 [54].) Thomas Thorson was terminated on August 29, 2013. (*See* Stipulation of Dismissal [116].) Charles Matlock was terminated on July 8, 2014. (*See* Stipulation of Dismissal [134].) All claims against defendant Forshay Land Title and Appraisal Services, Inc. were dismissed on March 21, 2016. (*See* Order of Mar. 21, 2016 [202].)

Defendants defrauded Plaintiffs of approximately three million dollars. (*See generally* Am. Compl.; Third-Party Compl.).

Between late 2009 and early 2010, Parker made a series of short-term "proof of funds" ("POF") or "back to back" ("BTB") transactions with Mr. Nowak, who acted as broker. (*See* Am. Compl. ¶ 12.; Third-Party Compl. ¶ 19.) Funds placed by Mr. Parker into escrow accounts were held to allow certain real estate transactions to close, and, upon their successful closing, the escrow deposits were refunded to Mr. Parker, along with interest. (*See* Am. Compl. ¶ 12; Third-Party Compl. ¶ 19.)

Soon after those successful transactions had occurred, Mr. Nowak contacted Mr. Parker to participate in a new series of POF/BTB real estate transactions, purportedly for a real estate investment group in Chicago, Illinois. (*See* Am. Compl. ¶ 13; Third-Party Compl. ¶ 20.) Those monies were to be held in various trust and escrow accounts of either attorneys or title companies and were to be used solely as POF for third parties to close real estate transactions and would not be transferred without written authorization. (*See* Am. Compl. ¶ 14; Third-Party Compl. ¶¶ 2 3.) In addition, Mr. Nowak requested that Mr. Parker locate others who would provide/invest money to serve as POF in the new series of transactions, and Messrs. White, Brantley, and Hill provided/invested monies for same. (*See* Am. Compl. ¶ 22(b); Third-Party Compl. ¶ 28(b)); *see supra* n.2.

As had been done previously, Mr. Nowak represented to Mr. Parker that funds provided would be used only as POF for real estate transactions and could not leave the escrow account or accounts into which they were to be transferred without Parker's written authorization. (*See* Am. Compl. ¶ 14; Third-Party Compl. ¶¶ 21, 23.) Mr. Nowak provided Mr. Parker with the names of purported borrowers, Messrs. Grossi and Burris, and was purportedly their broker or agent. (*See*

3

Am. Compl. ¶ 15; Third-Party Compl. ¶ 22.) Mr. Parker entered into separate escrow agreements and borrower agreements with, *inter alia*, Defendants Burris, Walls, Able, Luna, and Grossi, but not Mr. Nowak, who was acting as the broker. (*See* Am. Compl. ¶ 16; Third-Party Compl. ¶ 23.) Those agreements prohibited the release or transfer of funds except as authorized by Mr. Parker, and Defendants represented to him that such funds would not be transferred from the escrow accounts without his written authorization, and that they would be returned. (*See* Am. Compl. ¶ 16; Third-Party Compl. ¶¶ 4, 23.)

The Scheme was perpetrated over six (6) separate transactions made pursuant to those agreements. (*See* Am. Compl. ¶ 17; Third-Party Compl. ¶ 24.) Defendants knowingly solicited and received funds from both Mr. Parker and others and had numerous communications with them and among themselves regarding same. (*See* Am. Compl. ¶¶ 16-18; Third-Party Compl. ¶¶ 23-24.) The funds provided by the Plaintiffs were to be used as POF and, once deposited in the escrow accounts, they were never to leave the escrow account. (Am. Compl. ¶ 14). If the deal did not close, then the funds were to be immediately returned to the investors. (Am. Compl. ¶ 14; Third-Party Compl. ¶ 21). Under this arrangement, Parker provided $1,601,200.00 for Defendants to use as POF (Doc. 195-4, Parker Decl. ¶ 18); White provided $608,800 for Defendants to use as POF (Doc. 195-5, White Decl. ¶ 5); Hill provided $20,000 for Defendants to use as POF (Doc. 197-7, Hill Decl. ¶ 7); and Brantley provided $255,000 to Defendants to use as POF (Doc. 195-6, Brantley Decl. ¶ 7). In July 2010, Parker made a formal written demand to Defendants for return of the funds from the escrow account of Able, which represented that it held the entire amount of funds provided. (*See* Am. Compl. ¶ 21; Third-Party Compl. ¶ 27.) At some point after the funds were wired to the alleged trust accounts, the Defendants withdrew the

funds from the accounts for their benefit, and none of the funds Plaintiffs provided to/invested with Defendants have been returned. (*See* Am. Compl. ¶ 20; Third-Party Compl. ¶¶ 5, 26.)

The roles of Defendants in the unlawful scheme include, but are not limited to, the following: (a) Mr. Nowak had worked with Mr. Parker in past POF transactions; (b) Mr. Nowak contacted Mr. Parker regarding a search for other persons who would provide money to serve as POF in additional purported real estate transactions; (c) Mr. Nowak told Mr. Parker that Mr. Grossi (and others) were the purported "borrowers" in the real estate transactions and needed money to serve as POF only; (d) all Defendants with the exception of Messrs. Grossi, Burris, and Nowak (*i.e.*, Able, Walls, and Luna) purportedly performed title searches and drafted closing documents on properties purportedly involved in the real estate transactions which required monies to serve as POF; and (e) Defendants Nowak, Burris, Walls, Able, Luna, and Grossi received money from the Scheme and withdrew and retained all funds referenced above. (*See* Am. Compl. ¶ 22; Third-Party Compl. ¶ 28.) Grossi and Burris "have failed and refused to pay to Plaintiffs any 'premium' returns on the investment as promised to justify holding the funds." (Third-Party Compl. ¶ 36.)

### III. Standard of Review

The granting of a motion for default judgment is "at all times left within the sound discretion of the court." *In re Irby*, 337 B.R. 293, 294 (Bankr. N.D. Ohio 2005) (applying Federal Rule of Bankruptcy Procedure 7055, which incorporates Federal Rule of Civil Procedure 55). Courts have recognized, however, that "[i]t is fundamental that not all injuries are legally compensable; a tenet which may not be bypassed simply because a party fails to respond to a complaint. Thus, among the considerations a court is to employ when determining the propriety of entering a judgment by default is whether there exists a sufficient basis in the pleading for the

judgment's entry; or similarly, whether a viable cause of action is alleged." *Id.* (citations omitted). *See also Certain Underwriters at Lloyd's, London v. Alkabsh*, No. 09-2711, 2011 WL 938407, at * 8 (W.D. Tenn. March 15, 2011) ("The first step when faced with an entry of default and a motion for default judgment is to determine whether the complaint's factual allegations provide a sufficient legal basis for the entry of a default judgment.") Where a complaint fails to state a claim, a motion for default judgment should be denied. *See Bailey v. Harrison*, No. 95-6263, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) ("Default judgments would not have been proper due to the failure to state a claim against these defendants"); *see also Parks v. Conley*, No. 98-5064, 1999 WL 195740, at *2 (6th Cir. Mar. 23, 1999) (denying motion for default judgment and granting summary judgment in favor of the opposing party); *Starr v. Corley*, 662 F. Supp. 219, 220 (N.D. Ohio 1987) (denying motion for default judgment where complaint failed to state a claim for which relied could be granted). When considering whether a complaint states a claim in relation to a default judgment, the court accepts the allegations in the complaint as true. *General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 407 (6th Cir. 2010); *Cook*, 2006 WL 908600, at *3 (same).

In addition to ensuring that the complaint states a claim for which relief can be granted, a court shall also consider whether the moving plaintiff has satisfied several procedural requirements before entering default judgment for the plaintiff and against the defendant. First, the plaintiff must properly serve the defendant with process. *Broadcast Music v. Marler*, No. 1:09-cv-193; 2009 WL3785878 *4 (E.D. Tenn. Nov. 12, 2009) (citing *Virgin Records America, Inc. v. Bagan*, No. 08-cv-4694; 2009 WL 2170153 (D.N.J. Jul.21, 2009)).

Second, "the plaintiff must fulfill the procedural obligations of Fed. R. Civ. P. 55. Specifically, the plaintiff must first seek entry of default by demonstrating that the opposing

6

Case 1:11-cv-00294-TRM-CHS   Document 224   Filed 02/20/18   Page 6 of 16
PageID #: 1825

party has failed to answer or otherwise respond to the complaint." *Broadcast Music*, 2009 WL3785878 at *4, (citing *Keesh Construction, Inc. v. United States*, No. 1:02–CV–899, 2004 WL 2536840, *1 n. 1 (S.D. Ohio Sep.28, 2004)). "Once the clerk has entered a default, the moving party may then seek entry of a default judgment. . . . If the plaintiff's claim is for a sum certain, default judgment will be entered by the clerk, but if damages are uncertain or other relief is sought, the plaintiff must apply to the Court for default judgment." *Broadcast Music*, 2009 WL3785878 at *4, (citing Fed. R. Civ. P. 55(b) and *Keesh Construction, Inc.*, 2004 WL 2536840, at *1 n. 1.)

Third, if the defendant has entered an appearance, then the defendant must be served with notice at least three days before the hearing. *Broadcast Music*, 2009 WL 3785878 at *4, Fed. R. Civ. P. 55(b)(2); *Virgin Records*, 2009 WL 2170153, at *1.

Fourth, "the plaintiff must submit an affidavit stating that the defendant is not an infant or incompetent person." *Broadcast Music*, 2009 WL3785878 at *4; *Disney Enters. v. Farmer*, 427 F.Supp.2d 807, 815 (E.D. Tenn. 2006).

Fifth, and finally, the plaintiff must submit an affidavit stating whether the defendant is in military service, or if plaintiff is unable to determine whether the defendant is in military service, stating so. Servicemembers Civil Relief Act ("SCRA") § 201(b), 50 U.S.C. app. § 521(b)(1). *See also Broadcast Music*, 2009 WL3785878 at *4.

**IV. Analysis**

    **A. Procedural Requirements**

Plaintiffs have met all procedural requirements. Defendants have been served and have at no time responded or entered an appearance in this action; the Clerk of Court has entered a

default against the Defendants.³ Counsel has filed an affidavit averring that he has made inquiry into the background and status of Defendants and it appears no Defendant is a minor or incompetent. (T. Millirons Decl., ¶ ¶ 5-6; Doc. 195-2). Counsel further avers he has searched the LexisNexis U.S. Military Locator database and determined that Defendants are not serving in the military. (*Id.* at ¶ 7.)

### B. Review of Causes of Action

#### a. Breach of Contract

##### i. Elements, Burden of Proof, and Damages

In Tennessee, a plaintiff alleging a breach of contract claim must show the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Monaco Indus., LLC v. Shopper Local, LLC*, No. 3:13-CV-660-PLR-HBG, 2014 WL 4678283, at *6 (E.D. Tenn. Sept. 18, 2014) (internal quotation marks omitted); *see Ray v. Sadler Homes, Inc.*, No. M2011–01605–COA–R3–CV, 2012 WL 2150752, at *3 (Tenn. Ct. App. June 13, 2012) (affirming trial court's finding that plaintiff proved by a preponderance of the evidence a breach of contract); *cf. Harper v. Dixon*, No. E201500411COAR3CV, 2016 WL 2954311, at *5 (Tenn. Ct. App. May 16, 2016) ("It is the plaintiff's burden in a breach of contract action to prove damages by a preponderance of the evidence."). The measure of damages for a breach of contract is the nonbreaching party's expectation interest, measured by "(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus (b) any other loss, including incidental or

---

³ Defendant Burris was served with process on January 25, 2013. (*See* Affs. of Service [93, 110].) Able was served with process on January 28, 2013, and February 5, 2013. (*See* Affs. of Service [90, 94, 104, 109].) Ms. Luna was served with process on January 28, 2013. (*See* Affs. of Service [95, 106].) Mr. Grossi was served with process on January 25, 2013. (*See* Affs. of Service [92, 105].) Mr. Nowak was served with process on February 2, 2013. (*See* Affs. of Service [81, 82].) Mr. Walls was served with process on June 5, 2015. (*See* Aff. of Service [175].) Plaintiffs have applied for entry of default against each of those Defendants under Federal Rule of Civil Procedure 55(a) (*see* Applications for Entry of Default [147 through -51, 180]), and the Clerk has entered default against each of them (*see* Clerk's Entries of Default [158 through -62, 183]).

consequential loss, caused by the breach, less (c) any cost or other loss that he has avoided by not having to perform." *BVT Lebanon Shopping Ctr., Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 136 (Tenn. 2001).

Additionally, under Tennessee law, "in order to maintain an action as an intended beneficiary [of a contract], a third-party must show [by clear and direct evidence]: (1) a valid contract was made upon sufficient consideration between the principal parties; and (2) clear intent to have the contract operate for the benefit of a third party." *Chaves v. Bank of Am., N.A.*, No. 3:13-CV-498, 2014 WL 3052491, at *3 (E.D. Tenn. July 3, 2014).

### ii.     Discussion

Plaintiffs have asserted a breach of contract cause of action. As demonstrated by their proposed findings of fact and conclusions of law, Plaintiffs seek damages in the form of the return of their initial "investments," and the "premiums" Plaintiffs understood they were to receive by offering their monies as "proof of funds" in six purported real estate transactions. However, neither the Amended Complaint nor the Third-Party Complaint defines "premium." "Indefiniteness regarding an essential element of a contract may prevent the creation of an enforceable contract. A contract must be of sufficient explicitness so that a court can perceive . . . the respective obligations of the parties." *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (internal citations omitted).[4] The Court finds the amount of the "premium" to be awarded an essential element of the contract and its indefiniteness renders unenforceable any contract

---

[4] Three purported contracts between Parker and White were attached to the original complaint [Doc. 1-1]. At least two of these contracts are unsigned by Mr. White. In any event, they were not attached to the Amended Complaint. The Amended Complaint supersedes and supplants Plaintiffs' original Complaint. *Parks v. Federal Express Corp.*, 1 F. App'x. 273, 277 (6th Cir.2001) ("[A]n amended complaint supplants the original complaint and becomes the only live complaint in a civil case.")

9

Case 1:11-cv-00294-TRM-CHS   Document 224   Filed 02/20/18   Page 9 of 16
PageID #: 1828

between Plaintiffs and Defendants for a "premium" to be paid Plaintiffs for the use of their money as POF.

### b. Civil Conspiracy- Intentional Misrepresentation

#### i. Elements, Burden of Proof, and Damages

In Tennessee, (1) "[a]n actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff," and (2) "[a] claim for civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (citations and internal quotation marks omitted); *see Chilhowee Trailer Sales, Inc. v. Int'l Christian Church*, No. E200200901COAR3CV, 2003 WL 2010741, at *4 (Tenn. Ct. App. Apr. 29, 2003) (holding that civil conspiracy may be proved by a preponderance of the evidence). Upon a finding of civil conspiracy, "each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme." *Trau-Med of Am. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002); *cf. Brown v. Birman Managed Care, Inc.*, No. M1999-02551-COA-R3-CV, 2000 WL 122208, at *3 (Tenn. Ct. App. Feb. 1, 2000) (citing with approval 16 Am. Jur. 2d, *Conspiracy*, § 58) (noting that "[e]ach act done in pursuance of the conspiracy by one of several conspirators is, in contemplation of law, an act for which each is jointly and severally liable," and each conspirator's liability "applies to damages accruing prior to his or her joining the conspiracy as well as damages thereafter resulting – regardless of whether he or she took a prominent or an inconspicuous part in the execution of the conspiracy. . . . [or] profited from the result of the conspiracy").

10

The underlying tort in this case is intentional misrepresentation. In Tennessee, "[a]n action for intentional or fraudulent misrepresentation contains four elements: (1) an intentional misrepresentation of material fact, (2) knowledge of the representation's falsity, (3) an injury caused by reasonable reliance on the representation, and (4) the misrepresentation involves a past or existing fact." *Feil v. Bank of Am., N.A.*, No. 2:12-CV- 47, 2013 WL 1619509, at *4 (E.D. Tenn. Apr. 15, 2013); *see Dog House Investments, LLC v. Teal Props., Inc.*, 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) (noting that, in claims for promissory fraud, "a misrepresentation must embody a promise of future action without the present intention to carry out the promise," *i.e.*, a promise made in bad faith, or "any breach of contract would call for such a remedy" (internal citations and quotation marks omitted)).

Fraud "is never presumed," and the facts sustaining it "must be clearly made out." *Dog House Investments, LLC*, 448 S.W.3d at 916; *see also Watson v. Watson*, No. E2010–00577–COA–R3–CV, 2010 WL 5549050, at *8 (Tenn. Ct. App. Dec. 29, 2010) (noting that fraud must be proved by "clear and convincing evidence"); *cf. D'Alessandro v. Lake Developers, II, LLC*, No. E2011–01487–COA–R3–CV, 2012 WL 1900543, at *8, n.4 (Tenn. Ct. App. May 25, 2012) (noting that damages resulting from fraud need only be proved by a preponderance of the evidence.

"[T]he measure of damages in a fraud case is to compensate the injured party for actual damages by attempting to place that party in the same position that he or she would have been in had the fraud not occurred" and finding that damages representing the amount of money a lender had lost because of fraud were proper. *Credential Leasing Corp. of Tenn., Inc. v. White*, No. E2015–01129–COA–R3–CV, 2016 WL 2937094, at *6 (Tenn. Ct. App. May 17, 2016).

11

### ii. Discussion

Defendants began the Scheme by lulling Mr. Parker into a sense of security as to their intentions and practices when he engaged in a successful series of POF transactions brokered by Mr. Nowak. (*See* Am. Compl. ¶¶ 12, 22; Third-Party Compl. ¶¶ 19, 28.) Having satisfied Mr. Parker that the investment opportunities he offered were legitimate, Mr. Nowak then convinced him to further invest; to solicit other investors (*i.e.*, Messrs. White, Brantley, and Hill) to participate in further "opportunities" involving POF transactions; and to connect him with Messrs. Grossi and Burris. (*See* Am. Compl. ¶¶ 13-15, 22(b); Third-Party Compl. ¶¶ 20, 22-23, 28(b).) Mr. Nowak represented that, as with the previous transactions, the funds transferred to the escrow accounts would only be used as POF and could not leave those accounts without Parker's written authorization. (*See* Am. Compl. ¶ 14; Third-Party Compl. ¶¶ 3, 21.) Mr. Parker entered into separate escrow agreements and borrower agreements with, *inter alia*, Defendants Burris, Walls, Able, Luna, and Grossi, which represented to him that such funds would not leave the escrow account or be transferred from the accounts without his written authorization, and that they would be returned. (*See* Am. Compl. ¶ 16; Third-Party Compl. ¶¶ 4, 23.) Following Plaintiffs' transmittal of funds into the escrow accounts as part of the six separate transactions, and despite their formal written demand that the funds be returned pursuant to the terms of the agreements and Defendants' repeated representations that the funds were in the accounts and would be returned, some or all of Defendants withdrew the funds from the accounts for their benefit, and none have been returned. (*See* Am. Compl. ¶¶ 14-19, 21; Third-Party Compl. ¶¶ 5, 23-27; Compl. ¶ 20.)

These alleged facts, when considered as true, give rise to the reasonable inferences that (1) Defendants intentionally misrepresented that: (a) the funds were to be used only as POF, (b)

the funds could not be transferred from the escrow accounts without Mr. Parker's written authorization, and (c) the funds would be returned; (2) Defendants were aware from before the beginning of the Scheme that those representations were false, (3) Plaintiffs were injured by their reasonable reliance on Defendants' misrepresentations; and (4) Defendants' misrepresentations involved existing facts, *to wit*, the lack of the contemporaneous intention to honor their promises. *See Feil*, 2013 WL 1619509, at *4; *Dog House Investments, LLC.*, 448 S.W.3d at 916. Accordingly, under Tennessee law, Plaintiffs are entitled to recover their actual damages from Defendants. *White*, 2016 WL 2937094, at *6. Furthermore, each Defendant is responsible for each of the other's actions pursuant to the conspiracy and are therefore jointly and severally liable for the full amount of Plaintiffs' damages. *See Trau-Med of Am.*, 71 S.W.3d at 703.[5]

## V. Damages

In the instant case, the undersigned declines to hold an evidentiary hearing because calculation of damages can be made on the basis of the underlying record. The record is uncontested given the fact that Defendants have entered no appearance in this action despite having been served with process and despite multiple attempts to serve Defendants with the Plaintiffs' motions filed in this action. *See Zinganything, LLC v. Tmart UK Ltd.,* No. 5:14-cv-629*,* 2016 WL 362359, *6 (N.D. Ohio Jan. 29, 2016) (holding Rule 55(b)(2) permits but does not require the court to hold a hearing on damages; a court may rely on affidavits submitted in

---

[5] Plaintiffs have also stated a claim under Tennessee law for conversion.
> Under Tennessee law, "[c]onversion is the appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn.Ct.App.2009) (citations omitted). "A cause of action for conversion occurs when the alleged wrongdoer exercises dominion over the funds in 'defiance of the owner's rights.' " *Id.* (*quoting Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Tenn.Ct.App.2008)).

*Shipwash v. United Airlines, Inc.*, 28 F. Supp.3d 740, 753 (E.D. Tenn. 2014) (Varlan, J.) The "ordinary measure of damages for conversion is the value of property at the time and place of conversion with interest." *BancorpSouthBank v. 51 Concrete, LLC*, No. W2013-01753-COA-R3-CV (Tenn. Ct. App. Mar. 28, 2016)

13

Case 1:11-cv-00294-TRM-CHS Document 224 Filed 02/20/18 Page 13 of 16
PageID #: 1832

support of damages); *Summa Western Reserve Hosp. v. AssureCare*, No. 5:11-cv-1393, 2012 WL 1361608, *1 (N.D. Ohio April 19, 2012) ("An evidentiary hearing is not required by Rule 55(b) if the amount of damages can be determined by computation on the records before the Court"); *Broadcast Music v. Marler*, No. 1:09-cv-193, 2009 WL 3785878 * 5 (E.D. Tenn. Nov. 12, 2009) (citing *LeFarge N. Am. Inc. v. Wells Group, Inc.*, No. 4:08-cv-95, 2009 WL 2601854, at *5 (E.D. Tenn. Aug. 24, 2009)); *see also Pennsylvania Higher Educ. Assistance Agency v. Francioni*, No. 1:11-cv-115, 2011 WL 5122680 (E.D. Va. Sept. 8, 2011) (report and recommendation determining damages on the basis of uncontested affidavits), *adopting report and recommendation*, No. 1:11-cv-115, 2011 WL 5122672 (E.D. Va. Sept. 16, 2011).

As previously discussed, Plaintiffs are entitled to their actual damages which, in this case, are the amounts of funds "invested" in the POF scheme. Those amounts are as follows: Parker "invested" $1,601,200.00; White "invested" $608,800; Hill "invested" $20,000; and Brantley "invested" $255,000. Defendants Cuauthomee Burris, Able Title Insurance Company, Inc. ("Able"), Jo Ann Luna, Timothy Grossi, Gene Nowack a/k/a Eugene Z. Nowak, and LaCoulton J. Walls are jointly and severally liable to each of Plaintiffs for said amounts.

Plaintiffs also seek prejudgment interest. In a diversity action, the question of prejudgment interest must be determined under state law. *See F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000); *Clissold v. St. Louis-San Francisco Rwy. Co.,* 600 F.2d 35, 39 n. 3 (6th Cir.1979). In *Myint v. Allstate Insur. Co.,* 970 S.W.2d 920 (Tenn. 1998), the Tennessee Supreme Court explained the considerations relevant for awarding prejudgment interest:

> Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that the purpose of awarding the interest is to

14

> fully compensate a plaintiff for the loss of use of funds to which he or she was
> legally entitled, not to penalize a defendant for wrongdoing.

*Id.* at 927. This entire proof of funds scheme, to which Plaintiffs were apparently willing participants based on promises of high return for no risk, appears to have been a scheme set up to induce sellers of real estate to believe that Defendants had adequate "cash in hand" to purchase such real estate when, in fact, they did not. The Court further finds that Plaintiffs have been responsible for delays in the prosecution of this default judgment, and it would be unfair to penalize Defendants for such delays. For those reasons, the Court declines to recommend the award of prejudgment interest in the instant case, finding that such an award would not be equitable.[6]

Since "[i]t is well-established that a claimant cannot receive a double recovery for the same injury," *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998), the Court will not analyze the other causes of action asserted in the Amended Complaint and Third-Party Complaint.

## VI. Conclusion

For the reasons stated herein, it is **RECOMMENDED** that judgment be entered in favor of Plaintiffs Dexter W. White, Wayne Brantley, and David Hill and Third-Party Plaintiffs Grant Parker, Parker White, LLC, and Colorscapes, Inc. against Defendants Cuauthomee Burris, Able Title Insurance Company, Inc., Jo Ann Luna, Timothy Grossi, Gene Nowack a/k/a Eugene Z. Nowak, and LaCoulton J. Walls. It is further **RECOMMENDED** that damages be awarded from Cuauthomee Burris, Able Title Insurance Company, Inc., Jo Ann Luna, Timothy Grossi,

---

[6] Damages awarded under conversion would be the same as damages awarded for fraud and intentional misrepresentation. For the same reasons previously articulated, the Court would decline to grant prejudgment interest for conversion. The Defendants would be jointly and severally liable as members of a civil conspiracy to each of the Plaintiffs for their damages.

Gene Nowack a/k/a Eugene Z. Nowak, and LaCoulton J. Walls jointly and severally in the following amounts to:

1. Dexter W. White - $608,800.00

2. David Hill - $20,000.00;

3. Wayne Brantley - $255,000.00; and

4. Grant Parker, Parker White, LLC, and Colorscapes, Inc., collectively, - $1,601,200.00.

The Court further **RECOMMENDS** that post-judgment interest be awarded pursuant to 28 U.S.C. § 1961(a).[7]

s\ *Christopher H. Steger*<br>UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified constitutes a waiver of the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).